**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| RENEE SOLOFRA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:25-cv-11607 |
| | ) | |
| v. | ) | |
| | ) | Judge John Robert Blakey |
| AMERICAN AIRLINES, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT AMERICAN AIRLINES, INC.'S MOTION TO**
**DISMISS COUNTS II, III, & IV OF PLAINTIFF'S AMENDED COMPLAINT**

American Airlines, Inc., for its Rule 12(b)(6) Motion to Dismiss Counts II, III, and IV of

Plaintiff's First Amended Complaint, states as follows:

## I.     INTRODUCTION

Plaintiff alleges that she was sexually assaulted by an intoxicated passenger aboard an American

flight. American filed an answer and affirmative defenses to Count I for negligence. However, Count

II under the Consumer Fraud Act, Count III for fraud, and Count IV pursuant to the Illinois Gender

Violence Act are subject to dismissal. Under deep-rooted precedent, the two fraud-related counts are

preempted by the Airline Deregulation Act. They are also inadequately pled under Rule 9. And the

Gender Violence Act is inapplicable to the facts alleged, since American is not a "person" and did not

encourage or assist the perpetrator, and since the Act has no extraterritorial effect. This is a negligence

claim; the theories put forth in Counts II, III, and IV have no legal or logical merit here. For these

reasons, Counts II, III, and IV should be dismissed with prejudice.

## II.     COMPLAINT ALLEGATIONS

### a.   Allegations Common to All Counts

Plaintiff alleges she suffered a sexual assault that occurred in 2023 at the hands of a drunken

male passenger. (ECF 20, FAC). Plaintiff claims she was in a middle seat next to Daniel McAdams, who was "intoxicated and smelled of alcohol." (ECF 20, ¶ 19). A flight attendant allegedly served alcohol to McAdams. (ECF 20, ¶ 21). The man is alleged to have engaged in unwanted conversation with Plaintiff, put his hand in her lap, grabbed her neck, and grabbed her breast. (ECF 20, ¶¶ 22, 24).

Plaintiff does not allege that she informed any crew about McAdams' conduct during the flight. Plaintiff states that she reported McAdams' conduct to Southwest Florida International Airport authorities after she deboarded. (ECF 20, ¶ 28). Airport authorities arrested McAdams, and McAdams allegedly pled "no contest" to the criminal charges. (ECF 20, ¶¶29, 32-33).

Plaintiff alleges a growing problem of in-flight sexual assaults that was known within the airline industry. (ECF 20, ¶¶ 35-38). She describes three prior sexual assault incidents that were alleged to have occurred aboard American flights in 2017, 2018, and 2022. (ECF 20, ¶¶ 49, 50-51). Plaintiff cites to news stories reporting on each of these alleged events. (ECF 20, footnotes pp. 7-9).

Plaintiff's Complaint also describes a 2018 "public advisory" released by the FBI. Specifically, Plaintiff alleges: "In 2018, the FBI issued a public advisory in which FBI Special Agent Caryn Highley explained that '[t]here is a perception on an airplane that you're in a bubble of safety,' but that perception is false." (ECF 20, ¶ 36). Plaintiff goes on: "The same advisory noted a substantial increase in the number of reported in-flight sexual assaults." (ECF 20, ¶ 37). Plaintiff also alleges that the FBI assigns Airport Liaison Agents to 450 aviation facilities to respond to all in-flight crimes. (ECF 20, ¶¶ 39-40). The Independent article[1] cited by Plaintiff (ECF 20, ¶ 51) discusses the FBI alert and statistics related to in-flight sexual assaults.

### b. Count II – Illinois Consumer Fraud Act

In Count II, Plaintiff alleges that American "represented – through its website, ticketing

---

[1]    https://www.the-independent.com/news/world/americas/american-airlines-assault-flight-new-jersey-b2602014.html

process, Conditions of Carraige, safety messaging, and pre-boarding practices – that it prioritized passenger safety, enforced alcohol-service limits, monitored passenger conduct, and intervened when safety risks arose." (ECF 20, ¶ 81). Plaintiff alleges that American made these representations with an intent to induce, and that it failed to disclose an alleged history of in-flight sexual assaults and overserving of intoxicated passengers. (ECF 20, ¶¶ 82-83).

### c. Count III – Fraudulent Concealment

Plaintiff alleges that American represented "through its website, ticketing process, Conditions of Carraige, safety messaging, and pre-boarding practices – that it prioritized passenger safety, enforced alcohol-service limits, monitored passenger conduct, and intervened when safety risks arose." (ECF 20, p. 16, ¶ 80). Plaintiff cites a "2023 Sustainability Report" wherein American stated that "Everyone at American has a role to play in ensuring that our people, customers and assets remain safe" and "We are in business to provide safe, dependable and comfortable air transportation to our customers." (ECF 20, p. 16, ¶ 81). Plaintiff alleges that these representations – the only specific ones she alleges – were made prior to her flight. (ECF 20, p. 16, ¶ 82). However, the Sustainability Report[2] to which Plaintiff's Complaint links is dated June 2024 – nearly a year after her flight. (See Cited Report, p. 4). The link in the Complaint appears to be an edited link that omits the relevant date.

Apart from the vague and general safety representations made in the post-incident Sustainability Report, Plaintiff does not identify the specific source of American's alleged statements that it prioritizes passenger safety, enforces alcohol-service limits, monitors passenger conduct, or intervenes when safety risks arise. Nor does Plaintiff state that she ever actually looked at any of the purported sources of these statements.

---

[2] https://kepleraerospace.com/wp-content/uploads/2024/09/American-Airlines-Sustainability-Report-2023.pdf

Plaintiff goes on to allege that American knew of a history of sexual assaults and failure to monitor intoxicated passengers and that American concealed these facts by continuing to promote its flights as safe and well-monitored. (ECF 20, p. 17, ¶¶ 85-86). She alleges that she could not have discovered these allegedly concealed facts through reasonable inquiry because the data, history, and practices were not publicly disclosed. (ECF 20, p. 18, ¶ 88).

### d. Allegations of Count IV – Illinois Gender Violence Act

Plaintiff's Count IV attempts to assert a claim under the Illinois Gender Violence Act. Plaintiff alleges that, under *Gasic v. Marquette Mgmt.* (2019 IL app (3d) 170756) and amendments, American may be liable under the Act. (ECF 20, ¶ 97). This legal conclusion is wrong, as discussed below.

Plaintiff goes on to allege that American employees "affirmatively assisted and encouraged" McAdams's actions "through specific operational conduct, including alcohol service, seating decisions, and failure to interrupt an ongoing assault." (ECF 20, ¶ 98). American allegedly permitted a visibly intoxicated McAdams to board, repeatedly served him alcohol, engaged with him socially, and assigned Plaintiff a middle seat next to McAdams. (ECF 20, ¶¶ 99-102). The service of alcohol was allegedly a "central instrumentality of the assault." (ECF 20, ¶ 106). Plaintiff also alleges that American failed to intervene despite the "audible disturbance" and "visible distress." (ECF 20, ¶ 104). These actions, according to the Complaint, "affirmatively facilitated, prolonged, and intensified the gender-based violence inflicted on Plaintiff." (ECF 20, ¶ 105).

Plaintiff labels American's alleged actions as "assistance" and "encouragement" under the Act, and claims that this assistance and encouragement began in Illinois. (ECF 20, ¶¶ 107, 109)

### III. ARGUMENT

#### a. Standards Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) motion "tests the legal sufficiency of

4

a complaint as measured against the standards of Rule 8(a)." *Gunn v. Continental Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). Rule 8(a)(2) requires that a complaint contain "a short plain statement of the claim showing that the pleader is entitled to relief." Thus, a complaint must "state a claim to relief that is plausible on its face," meaning that it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, a plaintiff must provide enough detail to give the defendant "fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010).

### b. Counts II and III are Preempted by the Airline Deregulation Act.

Count II purports to state a claim under the Consumer Fraud and Deceptive Business Practices Act. Count III asserts common law fraudulent concealment. These claims[3] are preempted by the Airline Deregulation Act ("ADA"), and so should be dismissed with prejudice.

The ADA provides in part: "[A] State…may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier…" 49 U.S.C. § 41713(b)(1). This language expresses a "broad pre-emptive purpose." *Morales v. TWA*, 504 U.S. 374, 383 (1992). Not every cause of action against an airline is preempted. For example, a breach of contract claim that seeks only to hold the airline to its own self-imposed undertakings rather than state-imposed obligations might not be preempted. *Am. Airlines v. Wolens*, 513 U.S. 219, 228 (1995).

Remarkably, the Supreme Court has spoken specifically to the preemptive effect of the ADA on the Illinois Consumer Fraud Act, finding that such claims are preempted. *Wolens* at 228 ("In light of the full text of the preemption clause, and of the ADA's purpose to leave largely to the airlines

---

[3] Plaintiff's negligence and Gender Violence Act claims are also likely preempted, though questions at this early stage might preclude Rule 12(b)(6) dismissal.

themselves, and not at all to States, the selection and design of marketing mechanisms appropriate to the furnishing of air transportation services, we conclude that [the ADA] preempts plaintiff's claims under the Illinois Consumer Fraud Act."). One could not ask for more direct precedent on an issue.

This same reasoning applies to common law fraud claims. *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 609-10 (7th Cir. 2000). (See also *O'Callaghan v. Arm Corp.*, 2005 U.S. Dist. LEXIS 12889 at *4 (N.D. Ill. 2005) ("Allowing the Plaintiffs to use consumer fraud laws (both statutory and common) to obtain damages from the Defendants' advertising has the effect of regulating the Defendant's rates."). Thus, Plaintiff's fraudulent concealment claim is also preempted.

There is no room for nuance on this issue – the ADA preempts causes of action under the Consumer Fraud Act and common law fraud. These counts should be dismissed with prejudice.

### c. The Consumer Fraud Count is Insufficient Under Rule 9(b).

The heightened pleading standards of Federal Rule of Civil Procedure 9(b) apply to claims of deceptive conduct under the Consumer Fraud Act. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738-39 (7th Cir. 2019). "The rule is said to serve three main purposes: (1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim to the adverse party." *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (7th Cir. 1994). Compliance with Rule 9(b) "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011).

The elements of a Consumer Fraud Act claim are: (1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce." *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 501 (1996). While reliance is not an element, a consumer fraud complaint must show that the alleged fraud proximately caused the alleged injury. *Id.*

A Consumer Fraud Act complaint that "does not identify *who* made false and misleading statements, *when* they were made, *where* they were made, or the medium in which they were made," and which lacks the particulars of the false and misleading statements, is subject to dismissal. *Cardionet, Inc. v. Lifewatch Corp.*, 2008 U.S. Dist. LEXIS 15941 at *8 (N.D. Ill. 2008). Moreover, "vague" and "all-encompassing phrases," such as "most trusted" and "worry-free" that describe services without actually quantifying are not deceptive under the Consumer Fraud Act. *Baker v. ADT Corp.*, 2015 U.S. Dist. LEXIS 180138 at 18 (C.D. Ill. 2015).

Count III is impermissibly vague. Plaintiff never reveals what, specifically, American is alleged to have said about passenger safety, alcohol service limits, monitoring passenger conduct, and safety intervention. General representations about safety and the like are too vague to be actionable under the Consumer Fraud Act. Nor does Plaintiff ever state where in the vague sources she reveals (e.g., "website, ticketing process") these statements are. The sole specific source Plaintiff identifies – the Sustainability Report – did not exist prior to her flight.

The alleged omissions are also inadequately alleged and conclusory. Under the Consumer Fraud Act, "an 'omission' is an omission from a communication, rather than a general failure to disclose." *Darne v. Ford Motor Co.*, 2017 U.S. Dist. LEXIS 142425 at *32 (N.D. Ill. 2017). Plaintiff does not allege what communication omitted any material facts. As to the alleged omissions themselves, Plaintiff alleges that American has a "documented history of in-flight sexual assaults involving intoxicated passengers," but alleges only two such instances that occurred more than five years prior. (ECF 20, ¶¶ 49-50). (Plaintiff does not allege that the third incident involved intoxication). She alleges that American "routinely overserved alcohol and permitted visibly intoxicated passengers to board" but offers no non-conclusory factual support for this assertion. Likewise with the allegations that American failed to monitor intoxicated passengers or to consistently enforce its own safety and alcohol policies. Such allegations come nowhere near satisfying Rule 9(b).

7

In addition, Plaintiff has not adequately alleged proximate cause. "If a consumer has neither seen nor heard any such [deceptive] statement, then she cannot have relied on the statement and, consequently, cannot prove proximate cause." *De Bouse v. Bayer AG*, 235 Ill.2d 544, 554 (2009). Even if misrepresentations were made as alleged, Plaintiff has not alleged that she actually ever looked at any of these sources. Count II should be dismissed with prejudice.

### d. The Fraudulent Concealment Count is Insufficient Under Rule 9(b).

The elements of fraudulent concealment are: (1) the defendant concealed a material fact while under a duty to speak; (2) the defendant intended to induce a false belief; (3) the plaintiff could not have discovered the truth through reasonable inquiry or was prevented from making a reasonable inquiry and justifiably relied on the defendant's silence as a representation that the fact did not exist; (4) the plaintiff would have acted differently had she been aware of the concealed information; and (5) the plaintiff's reliance caused damages. *Abazari v. Franklin Univ. of Med. & Sci.*, 2015 IL App (2d) 140952 at ¶ 27. The heightened standards of Rule 9(b) apply to claims for fraudulent concealment. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012). Most fraudulent concealment precedent involves efforts to avoid a statute of limitations as opposed to a standalone claim.

A claim for fraudulent concealment "consists of non-action and is by its nature very difficult to plead with particularity." *Remmes v. Int'l Flavors & Fragrances, Inc.*, 453 F.Supp.2d 1058, 1072 (N.D. Iowa 2006). Generally, a claimant must plead "the types of facts omitted, where the omitted facts should have been stated, and the way in which the omitted facts made the representations misleading." 2 *Moore's Federal Practice* § 9.03[b] (3d ed. updated 2022). The Southern District of New York has stated that a fraudulent concealment plaintiff must plead "(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled plaintiff, and (4) what defendant obtained through the fraud." *Malmsteen v. Berdon, LLP*, 477 F.Supp.2d 655, 664 (S.D.N.Y. 2007).

### 1. *There is No Who, What, When, Where, and How.*

Plaintiff's Count III is insufficient for many of the same reasons as her Count II. She does not identify the who, what, when, where, and how. She does not allege where these alleged facts should have been stated or the person who should have stated them. Plaintiff does not allege any context or the way in which the omission of these alleged facts made any representations misleading. Plaintiff does not allege the time period over which the alleged relationship arose and the omission occurred.

In addition, Plaintiff does not allege that she could not have discovered these alleged facts through reasonable inquiry. To the contrary, she establishes that the alleged growing problem of in-flight sexual assaults was well-publicized. Plaintiff alleges that the FBI issued a "public advisory" in 2018 warning of the very issues Plaintiff claims were concealed from her. Likewise, Plaintiff's Complaint cites to contemporary news stories related to the alleged prior American incidents.

Given the FBI public statement, as well as the publicity surrounding other alleged events, Plaintiff can never establish that she could not have learned of the alleged concealed facts through a reasonable inquiry. "In short, a reasonable inquiry would have discovered the alleged concealment." *Nartey v. Franciscan Health Hosp.*, 2 F.4th 1020, 1026 (7th Cir. 2021). Dismissal is warranted.

### 2. *Plaintiff Fails to Allege a Duty to Disclose.*

The duty to disclose in a fraudulent concealment claim depends on the nature of the parties' relationship. *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 500 (1996). "A duty to disclose would arise if 'plaintiff and defendant are in a fiduciary or confidential relationship' or in a 'situation where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff.'" *Wigod v. Wells Cargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012) (quoting *Connick*). This second type of relationship "is extremely similar to that of a fiduciary relationship." *Benson v. Stafford*, 407 Ill.App.3d 902, 919 (1st Dist. 2010). "[S]tate and federal courts in Illinois have rarely found a special trust relationship to exist in the absence of a more formal fiduciary one." *Wigod*

9

at 571. "Factors to be considered in determining the existence of a confidential relationship include the degree of kinship of the parties; any disparity in age, health, and mental condition; differences in education and business experience between the parties; and the extent to which the allegedly servient party entrusted the handling of her business affairs to the dominant party, and whether the dominant party accepted such entrustment." *Id.* at 572 (quoting *Mitchell v. Norman James Constr. Co.*, 291 Ill.App.3d 927, 934 (1st Dist. 1997). This requires more than a "mere arm's length transaction." *Mitchell* at 934. Indeed, it requires the exercise of "overwhelming influence." *Wigod* at 572.

Plaintiff has not alleged the existence of a fiduciary or special trust relationship, or any well-pled facts that would support the existence of such a relationship. Rather, Plaintiff and American engaged in a routine, arm's length consumer transaction. This is not the type of relationship that gives rise to a duty to disclose.

Plaintiff may argue that American owed Plaintiff a duty as a common carrier. The common carrier relationship, though, does not give rise to fiduciary duties. *Karkomi v. American Airlines, Inc.*, 717 F.Supp. 1340, 1342-43 (N.D. Ill. 1989). Since the parties' relationship is not fiduciary, there is no duty. Even if there was some legal support for treating a common carrier relationship like a fiduciary relationship, the heightened duties imposed on a common carrier do not arise until the ticket-holding passenger is at the carrier's premises waiting to board. *Anderson v. Chi. Transit Auth.*, 2019 IL App (1st) 181564, ¶ 34 (1st Dist. 2019). The fraud alleged here is alleged to have occurred long before that.

### e. The Gender Violence Act Is Not A Cognizable Cause of Action In This Case.

Count IV attempts to assert a claim under the Illinois Gender Violence Act. The Act imposes liability against "a person or persons perpetrating…gender-related violence." 740 ILCS § 82/10. "Gender-related violence" is defined to include, among other things, "One or more acts of violence or physical aggressions satisfying the elements of battery…that are committed, at least in part, on the basis of a person's sex…" and "A physical intrusion or physical invasion of a sexual nature under

coercive conditions satisfying the elements of battery…" 740 ILCS § 82/5. "'[P]erpertrating' means either personally committing the gender-related violence or personally encouraging or assisting the at or acts of gender-related violence." 740 ILCS § 82/10.

This Gender Violence Act is not applicable here. First, the version that was in effect at the time of Plaintiff's flight in 2023 does not allow for corporate liability. Second, the Complaint is devoid of allegations that American encouraged or assisted McAdams in his assault. And third, the Act does not apply to conduct outside Illinois.

### i. **American is Not a "Person" Under the Act.**

In its original form, the Gender Violence Act permits suit "against a person or persons." 740 ILCS § 82/10. The Act does not define "person." An Illinois appellate opinion held that "under some circumstances" "it would be hypothetically possible to sue a legal entity for acting personally under the Act, if some fictional plaintiff were to file a perfectly-worded complaint." *Gasic v. Marquette Mgmt.*, 2019 IL App (3d) 170756, ¶¶ 16-17. However, Illinois federal courts consistently prohibit suits under against corporations, finding that the Illinois Supreme Court would conclude that corporations are not "persons." *J.R. v. Bd. Of Educ. Of the City of Chicago*, 2023 U.S. Dist. LEXIS 22923 (N.D. Ill. 2023) *citing Doe ex rel. Smith v. Sobeck*, 941 F.Supp.2d 1018, 1027 (S.D. Ill. 2013). "So far, every [district] court to squarely address this issue has decided that the IGVA does not apply to corporations." *Robinson v. FedEx Ground Package Sys.*, 2020 U.S. Dist. LEXIS 20130, *7 (N.D. Ill. 2020).

The Act was amended effective January 1, 2024 to allow for liability against employers for employee conduct under certain circumstances. *Rattunde v. Scores Chi. Gentleman's Club*, 2024 U.S. Dist. LEXIS 192594 at *3 (N.D. Ill. 2024). 740 ILC § 82/11. However, the amendment has no retroactive effect; claims cannot be brought under the amendment unless they accrued on or after January 1, 2024. *Rattunde* at *9 (finding the amendment inapplicable to plaintiff's claims because she was not an

11

employee after the amendment's effective date). Here, Plaintiff's alleged assault occurred in 2023. Since Plaintiff's claim accrued before the amendment, the amendment is inapplicable.

Under the version of the Act applicable to the facts alleged, corporations cannot be held liable. Since American is a corporation, Plaintiff cannot recover under the Gender Violence Act.

### ii.        *American Did Not Encourage or Assist McAdams.*

Even if the latter version of the Gender Violence Act were to apply, the Complaint fails. The Act defines "perpetrating" as "personally committing the gender-related violence or personally encouraging or assisting the act or acts of gender-related violence." 740 ILCS § 82/10. District courts have looked to the dictionary to define "encourage" and "assist," which mean "'to inspire with courage, spirit, or hope,' 'to attempt to persuade,' 'to spur on,' 'to give help or patronage to,' or 'to give support or aid.'" *Rosas v. Komatsu Am. Corp.*, 2018 U.S. Dist. LEXIS 173708, *5-6 (C.D. Ill. 2018). "The IGVA has therefore been interpreted to require more than inaction to impose liability on a defendant alleged to have encouraged or assisted another's acts of gender-related violence…" *Id.* at *6. In other words, knowledge plus inaction is insufficient to state a claim under the Act. *Franks v. Anchez, Inc.*, 2022 U.S. Dist. LEXIS 168499, *5-6 (N.D. Ill. 2022).

Plaintiff's Complaint alleges that American served McAdams alcohol, made seating decisions, engaged with him socially, and failed to stop the assault. None of these alleged actions can be interpreted as actively "encouraging or assisting" McAdams in his alleged sexual assault. American employees had no reason to know McAdams was going to commit an assault, and so cannot have encouraged or assisted him in his crime. By Plaintiff's logic, everyone who McAdams came into contact with that day would be liable.

Plaintiff's Complaint repeatedly refers to American's alleged provision of alcohol to McAdams. She calls it the "central instrumentality." But that would make this a Dramshop Act case, since "few rules of law are as clear as that no liability for the sale or gift of alcoholic beverages exists

in Illinois outside of the Dramshop Act." *Charles v. Seigfried*, 165 Ill.2d 482, 490 (1995). Plaintiff's initial Complaint was filed beyond the one-year statute of limitations for Dramshop Act claims. 235 ILCS 5/6-21(a). And anyway, Dramshop Act claims would certainly be preempted by the ADA.

Moreover, and again only if the latter version of the Gender Violence Act applies, American could only be liable if its actions proximately caused the gender violence. 740 ILCS § 82/11(a). "As a matter of public policy, the furnishing of alcoholic beverages is considered as too remote to serve as the proximate cause of the injury." *Charles* at 486. So, legally, American's alleged provision of alcohol to McAdams cannot be the proximate cause under the Gender Violence Act.

Thus, nothing American is alleged to have done here – whether providing alcohol, making seating decisions, socializing with McAdams, or failing to stop an assault about which it did not know – supports liability under the Gender Violence Act.

### iii.    *The Act Has No Extraterritorial Effect.*

Nothing in the Act suggests that it applies to conduct outside Illinois. "[T]he long-standing rule of construction…holds that a 'statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute.'" *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 184-85 (2005). Therefore, the Act does not apply to conduct committed outside of Illinois. *Tavel v. Riddle*, 2021 U.S. Dist. LEXIS 55308, *15 (N.D. Ill. 2021). The "critical question" is whether the circumstances relating to the claim "occurred primarily and substantially in Illinois." *Avery* at 187.

Plaintiff's Complaint is silent as to where McAdams committed his alleged acts of gender violence. They occurred after beverage service, which does not occur until well after take-off. (ECF No. 1, ¶ 22). Plaintiff alleges that Florida authorities arrested McAdams, and that McAdams pled "no contest" to these Florida charges. Given Plaintiff's allegations, the only conclusion to draw is that McAdams committed his alleged acts outside of Illinois. Therefore, the Act does not apply.

Plaintiff will try to shift the Court's focus to American's alleged boarding of an intoxicated McAdams in Chicago. But that is immaterial. The Act applies to committing, encouraging, or assisting acts of gender-related violence; as discussed above, American's alleged conduct does not qualify. Even if American's conduct is relevant, it cannot be said that any violations of the Act occurred "primarily and substantially in Illinois" given that the actual alleged act of gender violence did not.

## IV. CONCLUSION

Plaintiff has adequately alleged a negligence claim. American does not believe it's meritorious, but it is sufficiently pled. The additional fraud and Gender Violence Act claims just do not make sense here. More to the point, though, they preempted by the ADA. To the extent the Court engages in further analysis, it will see that that the fraud claims are impossibly insufficient and that the Gender Violence Act is not actionable here. Counts II, III, and IV should be dismissed with prejudice.

WHEREFORE, Defendant, American Airlines, Inc., respectfully requests that this Honorable Court grant its Rule 12(b)(6) Motion to Dismiss Counts II, III, and IV of Plaintiff's First Amended Complaint, enter an order dismissing Counts II, III, and IV with prejudice, and order any further relief this Court deems equitable and just.

Respectfully submitted,

AMERICAN AIRLINES, INC.

Michael S. McGrory

Michael S. McGrory
Edna McLain
Cody A Marshall
Lorianna A Young
AMUNDSEN DAVIS LLC
150 North Michigan Avenue, Suite 3300
Chicago, Illinois 60601
mmcgrory@amundsendavislaw.com
emclain@amundsendavislaw.com
cmarshall@amundsendavislaw.com
(312) 894-3200

14