# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| RENEE SOLOFRA, | |
| Plaintiff, | Case No. 1:25-cv-11607 |
| v. | |
| AMERICAN AIRLINES, INC. | Judge John Robert Blakey |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's Rule 12(b)(6) motion to dismiss, [27]. For the reasons explained below, the Court grants Defendant's motion, dismissing Counts II, III, and IV.

## I. Factual Background[1]

On September 25, 2023, Plaintiff Renee Solofra ("Solofra") was a passenger aboard Defendant American Airlines' Flight 1929, which departed from O'Hare International Airport ("ORD") to Southwest Florida International Airport ("RSW"). [20] ¶¶ 13, 15, 16, 19. Solofra occupied her row's middle seat and Daniel McAdams ("McAdams") occupied the aisle seat. *Id.* ¶¶ 17, 18, 19.

Prior to and during the flight, McAdams smelled of alcohol and was intoxicated. *Id.* ¶¶ 19, 21. McAdams requested alcohol from flight attendants, and a

---

[1] This Court takes these facts from Plaintiff's First Amended Complaint, [20], and accepts them as true for the purposes of resolving this motion to dismiss. *See Killingsworth v. HSBC Bank Nevada*, 507 F.3d 614, 618 (7th Cir. 2007).

flight attendant continued to serve him alcohol and flirted with him. *Id.* During the flight, McAdams talked to Solofra despite her attempts to focus on her phone. Id. ¶ 20. At one point, McAdams put his hands on Solofra's lap, grabbed her neck, and pulled her towards him. *Id.* ¶ 22. Solofra told McAdams to stop touching her, but he continued to harass her, eventually grabbing Solofra's breast without her consent and squeezing it twice. *Id.* ¶¶ 23, 24. Solofra told him to leave her alone. *Id.* ¶ 25. Eventually, an unidentified passenger seated across the aisle told McAdams to stop assaulting Solofra, but no flight attendants intervened despite the events' audible disturbance. *Id.* ¶¶ 26, 27.

After exiting the plane at RSW, Solofra reported McAdams' assault to airport authorities. *Id.* ¶ 28. Authorities detained and questioned McAdams and based on McAdams' own admission that he grabbed Solofra and additional corroborating testimony by fellow passengers, authorities arrested McAdams. *Id.* ¶¶ 29, 30, 31, 32. McAdams pled no contest to criminal charges for the assault. *Id.* ¶ 33.

The ordeal was understandably painful and traumatic to Solofra. Solofra filed suit against American Airlines on September 24, 2025. [1]. Solofra then filed her First Amended Complaint on December 17, 2025, [20], alleging negligence (Count I), a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. (Count II), fraudulent concealment (Count III), and a violation of the Illinois Gender Violence Act ("IGVA") (Count IV). *See* [20]. American Airlines now moves to dismiss Counts II, III, and IV under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. *See* [27].

## II.  Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged misconduct.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully.  *Id.*  In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-plead allegations as true and draws all reasonable inferences in the plaintiff's favor.  *Id.*  This Court does not, however, accept a complaint's legal conclusions as true.  *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

## III.  Analysis

Defendant moves to dismiss Counts II, III, and IV.  The Court discusses each in turn.

### A.  Preemption under the Airline Deregulation Act

Defendant argues the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713(b)(1), preempts Count II, a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq., and also Count III, fraudulent concealment.  [27] at 5.  The Court agrees.

3

The ADA preempts State enforcement actions, such as laws, regulations, or other provisions having the force and effect of law, related to — that is, "having a connection with or reference to" — a price, route, or service of an air carrier that may provide air transportation. 49 U.S.C. § 41713(b)(1); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992). This preemption rule exists to "promote maximum reliance on competitive market forces" and "ensure that the States would not undo federal deregulation with regulation of their own." *Morales*, 504 U.S. at 378.

These state enforcement actions may relate to airlines' rates, routes, or services expressly or by having a significant economic impact upon them. *Travel All Over the World, Inc. v. Kingdom of Saudia Arabia*, 73 F.3d 1423, 1432 (7th Cir. 1996). Accordingly, the preemption rule's reach and scope are broad, applying even to laws which are not specifically addressed to the airline industry. *Morales*, 504 U.S. at 383, 386. Even so, the ADA's preemption rule will not apply to state actions that affect airline fares in "too tenuous, remote, or peripheral a manner." *Id.* at 390.

The Illinois Consumer Fraud Act serves to "guide and police the marketing practices of the airlines" rather than just "give effect to bargains offered by the airlines and accepted by airline customers." *American Airlines v. Wolens*, 513 U.S. 219, 227–228 (1995). In *Wolens*, the Supreme Court analogized the Consumer Fraud Act to National Association of Attorney Generals advertising guidelines preempted in *Morales v. Trans World Airlines*, 504 U.S. 374 (1992), which instructed airlines on language appropriate to reserve rights to alter frequent flyer programs. *Id.* at 228. These, the Court said, "highlight the potential for intrusive regulation of airline

4

business practices inherent in state consumer protection legislation" like the Illinois Consumer Fraud Act. *Id.* at 227. The ADA's purpose, however, is to "leave largely to the airlines themselves, and not at all to States, the selection and design of marketing mechanisms appropriate to the furnishing of air transportation services." *Id.* at 228. Thus, the Court held that the ADA preempted respondent's claim under the Illinois Consumer Fraud Act. *Id.*

Here, Plaintiff's Consumer Fraud Act claim seeks to control and affect how American Airlines should market and represent itself through its website, ticketing process, Conditions of Carriage, safety messaging, and pre-boarding practices about expectations of service. Plaintiff concedes that American Airlines' representations are made "in connection with the sale of airline tickets in Illinois." *Id.* Thus, as in *Wolens*, Plaintiff's Illinois Consumer Fraud Act claim is preempted, and the Court dismisses Count II.

The ADA similarly preempts Count III, a fraudulent concealment under state law. In *United Airlines, Inc. v. Mesa Airlines, Inc.*, the Seventh Circuit wrote the ADA preempts "state anti-fraud statutes as applied to air carriers' rates, routes, and services; just so with common-law rules against fraudulent inducement." 219 F.3d 605, 610 (7th Cir. 2000). Fraudulent concealment, a state common law claim, *Connick v. Suzuki Motor, Co., Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996), is no different.

Here, Plaintiff's fraudulent concealment claim is directly aimed Defendant's services, which include "the transportation itself" and "all elements of the air carrier service bargain." *Travel All Over the World*, 73 F.3d at 1433–34. Plaintiff points to

5

Defendant's representations through its website, ticketing process, Conditions of Carriage, marketing materials, and onboard safety messaging about safety and alcohol-service limits. [20] ¶ 80. Plaintiff asserts American Airlines failed to disclose material information to the contrary, constituting fraudulent concealment. *Id.* ¶ 84.

These representations about passenger safety involve bargained-for or anticipated provisions of labor from one party to another. When purchasing an airline ticket, customers reasonably anticipate an air carrier will provide a safe travel experience—just as they anticipate helpful baggage handling, quality food and drink, and effective customer service. *Kislov v. American Airlines, Inc.*, No. 17 C 9080, 2022 WL 846840, at *3 (N.D. Ill. Mar. 22, 2022) ("Customer assistance—either before or after the flight—is an 'integral part of the customer's experience of air travel,' which customers consider 'in evaluating the quality' of that experience."). Like customer service, food, drink, and baggage handling, the issue of safety is integral to the quality of services that an airline provides. *Id.* at *4. Thus, Plaintiff's claim relies on the bargained-for or anticipated provision of labor between an airline and its customers. Accordingly, Plaintiff's fraudulent concealment claim is also preempted under the ADA, and the Court dismisses Count III. *See also S.C. Johnson & Son, Inc. v. Transport Corp. of America, Inc.*, 697 F.3d 544, 557, 561 (7th Cir. 2012) (affirming the preemption of fraudulent misrepresentation and conspiracy to commit fraud claims under the ADA).

**B. The Illinois Gender Violence Act.**

Plaintiff's Count IV asserts that "Defendant American Airlines is liable under the Illinois Gender Violence Act for the acts of its employees who, while acting within the scope of their authority, personally encouraged and assisted the gender-based violence inflicted upon Plaintiff" by "continuing alcohol service, maintaining Plaintiff's forced proximity to her assailant, and failing to intervene during an ongoing assault." [20] ¶¶ 112, 105. Defendant argues that Plaintiff lacks a cognizable causation of action under the IGVA, 740 ILCS 82/1 et seq. (West 2022), because American Airlines, a corporation, is not a "person" under the IGVA. The Court agrees.

On September 25, 2023, when McAdams assaulted Plaintiff, the IGVA stated that any person subjected to gender-related violence may bring a civil action for damages, among other remedies, against a person or persons perpetrating that gender-related violence. 740 ILCS 82/10 (West 2022).[2] The "plain meaning and context of the IGVA both indicate that a corporation is not a 'person.'" *Fuesting v. Uline, Inc.*, 30 F.Supp.3d 739, 744 (N.D. Ill. 2014). The "plain and ordinary meaning

---

[2] Illinois amended the IGVA in 2023, revising § 5 and § 20 and adding § 11, which took effect on January 1, 2024, after Plaintiff's assault. 740 ILCS 82/5, /11, /20 (West 2024). §11 extends liability to employers due to the actions of their employees "when the interaction giving rise to the gender-related violence arises out of and in the course of employment with the employer." 740 ILCS 82/11 (West 2024). Because the amendment extends liability to employers, this change is substantive, so it does not retroactively apply to Plaintiff's claim. Under Illinois law, a substantive amendment to a statute "'prescribes the rights, duties, and obligations of persons to one another as to their conduct or property and … determines when a cause of action for damages or other relief has arisen.'" *Clay v. Union Pacific Railroad Company*, 171 F.4d 975, 980 (7th Cir. 2026) (citing *Perry v. Dept. of Fin. and Prof. Reg.*, 106 N.E.3d 1016, 1034 (Ill. 2018)). Statutory amendments and repeals that are procedural in nature may be applied retroactively but substantive ones cannot. *Foster Wheeler Energy Corp. v. LSP Equipment, LLC*, 805 N.E.2d 688, 692 (Ill. App. Ct. 2004). Thus, the amended IGVA does not apply retroactively to claims occurring prior to its effective date.

of the term 'person' is 'an individual human being.'" *Id.* citing *People v. Christopherson,* 899 N.E.2d 257, 260 (2008). "Person" does not generally include legal entities within its meaning. *Id.* citing *Fayfar v. CF Mgmt.-IL, LLC,* 2012 WL 6062663, at *1 (N.D. Ill. Nov. 4, 2012). The "Illinois legislature has, in the past, expressly indicated when it intends 'person' to have a broader meaning." *Id.* Here, the Illinois legislature did not do so in the pre-2024 amendment IGVA, and corporations are not included within its meaning. *See Fuesting,* 30 F.Supp.3d at 744 (dismissing plaintiff's claim as the IGVA "does not extend to corporations"); *see also Flood v. Washington Square Restaurant, Inc.,* No. 12 C 5729, 2012 WL 6680345, *3 (N.D. Ill. Dec. 21, 2012) ("the 'person' who perpetrates gender-related violence under the IGVA cannot be a corporation"); *Mundo v. City of Chicago,* No. 20 C 2562, 2021 WL 3367160, *5 (N.D. Ill. Aug. 3, 2021) (same). Accordingly, the Court grants Defendant's motion to dismiss Count IV.

## IV. Conclusion

Plaintiff was the victim of monstrous conduct, but Plaintiff asserts claims for which relief cannot be granted as a matter of law. Thus, this Court grants Defendant's motion, [27], and dismisses Counts II, III, and IV with prejudice.

Date: July 23, 2026

Entered:

John Robert Blakey
United States District Judge

8